**MEYERS v. PRICE.**

No. 10024.

Court of Civil Appeals of Texas. Austin.

March 19, 1952.

Rehearing Denied April 9, 1952.

 

Paul Petty, Ballinger, Cliff Tupper, San Angelo, Clyde Vinson, San Angelo, for appellant.

Frank & Frank and D. A. Frank, Dallas,. for appellee.

HUGHES, Justice.

This appeal is from an order of the trial court dismissing appellant's suit after having sustained numerous special exceptions made by appellee to appellant's petition and after appellant declined to amend.

Plaintiff below and appellant here is G. E. Meyers; appellee is E. S. Price.

The material allegations of appellant's petition are:

That on September 28, 1950, the parties entered into the following contract:

"I, E. S. Price, this 28th day of September, 1950, enters into the following contract with G. E. Meyers, E. S. Price has this date employed G. E. Meyers as his agent, E. S. Price agrees to pay G. E. Meyers 5% Commission on all sales of oil and gas, leases, Production and equipment owned by E. S. Price in Runnels County, Texas, and $1000.00 per month salary and expenses for one year from above date, Plus 1/64th override in all wells drilled on fee land and leases owned by E. S. Price in Runnels County, Texas, from the above date. E. S. Price is to furnish G. E. Meyers with transportation."

That relying upon said contract appellant:

"* * * at the instance of Defendant, accompanied Defendant on a trip from Ballinger, Texas, to Dallas, St. Louis, Peoria and Chicago in October, 1950, for the purpose of initiating, promoting and making sales of properties of defendant in Runnels County, Texas, and on such trip Plaintiff did, at the instance of Defendant assist Defendant in making contacts with prospective purchasers, and in entertaining, arranging appointments, and in interesting prospective purchasers of such properties; and among the prospective purchasers contacted, en-

tertained and interested in said properties on such trip were Carl Miles, Harvey C. Fruehauf, Louis Rose and Charles C. Bohn; and Defendant negotiated a contract with such parties for the sale to them of all of the personal property and equipment in Runnels County, Texas, belonging to Defendant pertaining to drilling and maintaining of oil wells for $200,000.00, which sale was consumated in a written contract in Dallas, Texas, on the 10th day of November, 1950, the property delivered to such purchasers and the money paid to defendant.

"Plaintiff assisted Defendant in locating, identifying and actually delivering over the possession of said property.

"4. At the same time, with the assistance from the Plaintiff indicated hereinabove, Defendant negotiated for the sale of all of the oil and gas leases on lands in Runnels County, Texas (including a lease on certain fee lands owned by Defendant) owned by Defendant, to said Carl Miles, and such leases were sold to said Carl Miles in written contract also consumated in Dallas, Texas on November 10, 1950, for an additional and separate consideration; that thereafter, at the instance of Defendant, Plaintiff assisted Defendant in preparation for carrying out the terms of said contract of sale, which called for furnishing of abstracts of title on such properties by Defendant, furnishing of said Purchaser's Attorney's Title opinion on such properties, and furnishing of such curative data called for therein, by Defendant; and in connection with such title work, Defendant drove several *thousand miles* gathering abstracts and obtaining curative instruments seeking to meet objections of such title opinions, all at the instance of Defendant, by virtue of said agreement between Plaintiff and Defendant. That Defendant failed and refused to meet the title requirements in full, and for this or some other reason, known to Defendant, but not to Plaintiff, said contract

for the sale of said leases, entered into between said Defendant and said Miles in Dallas, Texas, on November 10, 1950, was never carried out by transfer of such properties and payment of the consideration called for; and in lieu thereof a new deal was worked out between Defendant and said Miles reduced to written contract on April 3, 1951, whereby Defendant sold to said Miles certain oil and gas leases on lands in Runnels County, Texas, Totaling 1737 acres, fully described in contract between such parties filed for record April 4, 1951, *the* the Office of the Clerk of Runnels County, Texas, under file No. 1570, to which instrument reference is here made for all purposes, by the terms of which Carl Miles agreed to pay Defendant the sum of $100,000.00 in cash; and included in the leases so sold by Defendant to Carl Miles is oil, gas and mineral leases dated August 20, 1945, from R. L. Huddleston et ux, to E. S. Price, recorded in Vol. 198, page 551, Deed Records of Runnels County, Texas, covering 197.8 acres out of the North 274½ acres of the E. T. R. R. Co. Survey. No. 145, Abstract No. 158, on which two oil and gas wells have been drilled by Defendant since September 28, 1950; and said contract has been fully consumated between Defendant and said Miles, Plaintiff, at the instance of Defendant, and by reason of said agreement between Plaintiff and Defendant, aided Defendant to carry out this sale contract with said Miles by complying with title requirements; and in meeting title requirements in connection with said transaction between Defendant and said Miles, and miscellaneous jobs for Defendant, at his instance, Plaintiff drove Defendant's pick-up approximately 24,000 miles.

"5. Relying upon said agreement of Defendant with Plaintiff, Plaintiff made said trip with Defendant to Chicago, Illinois, via Dallas, St. Louis and Peoria, which Defendant made for the purpose of finding a purchaser or pur-

chasers of his properties in Runnels County, Texas, and at the instance of Defendant, and in reliance upon Defendant's said agreement with Plaintiff, Plaintiff made use of his personal acquaintances to aid Defendant in finding prospective purchasers of such properties, and in this connection Plaintiff caused Defendant to meet the following persons, with whom the matter of sale of such properties was discussed: * * * In each of said cities Defendant maintained an expensive suite of hotel rooms during his stay, with a plentiful supply of liquors, and under the direction of Defendant, Plaintiff helped entertain all such prospects and to sell them on the investment possibilities of the Runnels County properties of Defendant.

"After said contracts were entered into between said Miles and Defendant, Plaintiff, at the instance of Defendant, helped gather up the abstracts and procure supplemental abstracts to the properties involved as aforesaid and get such abstracts and supplements into the hands of the attorneys for said purchaser, and Plaintiff, at the instance of Defendant obtained for Defendant much of the curative data required in such title opinions; and such work done for Defendant by Plaintiff, in reliance upon the agreement between Plaintiff and Defendant aforesaid, entailed many thousands of miles of driving by Plaintiff, which was done in Defendant's pick-up largely.

"In reliance upon said agreement of Defendant with Plaintiff, Plaintiff performed for Defendant many other duties and services, to-wit, (1) contacted Onyx Refinery at Abilene, Texas, about buying Defendant's oil; (2) went to Premier Refinery at Baird and obtained agreement to take oil from Defendant's wells; (3) contacted James R. Moore at Coleman, Texas, and arranged for him to haul oil from Defendant's leases in Runnels County, Texas, to Premier's pipe line at Novice, Texas; (4) helped Defendant in his office work by aiding and supervising the preparation of payroll records, time records, Social Security Records, Railroad Commission Reports; (5) made three trips on behalf of Defendant to the office of the Wage and Hour Division of the United States Department of Labor, in connection with overtime wages due employees; (6) contacted several former employees of Defendant for settlement of claims for overtime; (7) went to Corpus Christi, Texas, for Defendant in connection with suit of G. E. Carlson against Defendant to set aside sale by Defendant to G. E. Carlson of certain oil properties, wherein Defendant obtained said Carlson's yacht; and Plaintiff was instrumental in getting said Carlson to allow plaintiff credit for monies expended by Defendant in making improvements upon said yacht; (7) assisted Defendant in plugging and shooting Wilke well by procuring from supply stores various supplies and checking tubing as withdrawn and in setting plug and re-setting tubing, and in arranging for acid and water truck; (8) hauled davenport and two chairs from Defendant's home to shop in Brownwood and had them reupholstered; (9) also at instant of Defendant took electric washer to shop in Brownwood and had it repaired; (10) took abstracts on well tracts of Defendant to law firm of Turner and Seabury, in Eastland, Texas, and obtained curative data requested by such firm and then made two trips to Eastland to see such lawyers about approving title and releasing checks for payment of oil, and on authority of Defendant signed the Division Order with Premier Oil and Refining Company; (11) made several trips with Price to office of Dallas Scarborough in Abilene, Texas, in connection with contract between Defendant and Carl Miles; (12) made trips with Defendant and Huddleston to office of Scarborough and Scarborough in Abilene, Texas, in connection with title to Huddleston lease and at Defendant's direction accompanied Huddleston to Paris, Texas, to obtain

some quitclaim deeds; (13) made several trips to office of Wilson and Wilson in San Angelo, Texas, in connection with transactions of Defendant involving loans; (14) made several trips to Railroad Commission office in San Angelo, Texas, in connection with Defendant's records with the Railroad Commission. These and other activities of Plaintiff in behalf of Defendant entailed the driving of Defendants pickup more than 24,000 miles.

"6. From September 28, 1950, until April 7, 1951, Plaintiff devoted his full time to performance of such duties for Defendant as outlined and set forth above, in reliance upon said agreement with Defendant. On April 7, 1951, Defendant abruptly discharged Plaintiff and repudiated said agreement and refused to perform any part thereof.

"7. During such period of employment under such agreement, at the instance of Defendant, Plaintiff expended out of his own funds in behalf of Defendant, with the understanding that same would be repaid to him on demand, the following sums: * *."

The expenses listed total $3,593.62, $566.25 of which were alleged to have been paid.

Appellant also alleged that he was employed under such contract for six months and ten days and earned a salary, in addition to other compensation, of $6,333, of which $1,900 had been paid.

Oil and gas leases were described and alleged to be owned by appellee and from which oil and gas had been produced during the contract period.

Appellant prayed:

"* * * for judgment against Defendant for services rendered by Plaintiff to Defendant under and by reason of said agreement made by Defendant with Plaintiff on September 28, 1950, as hereinabove set forth, for five percent of said sales made by Defendant, and of said production, for the balance owed upon said salary item and for the remainder of said expenses incurred by Plaintiff as aforesaid, and for 1/64ths overriding royalty in said wells drilled by Defendant since September 28, 1950, as aforesaid; and such other relief, special and general, at law and in equity, to which Plaintiff may be justly entitled, for interest, costs herein."

Appellee directed thirty-six special exceptions to this petition, many of which contained one to four parts. The trial court sustained twenty-six of these exceptions.

The exceptions sustained fall within the following general classifications: (1) Failure to allege that appellant was a licensed real estate dealer or broker, (2) failure to allege that appellant was the procuring cause of any of the sales alleged to have been made, (3) that certain items listed were not "expenses" within the meaning of the contract, (4) that many allegations were immaterial and (5) that other allegations were indefinite, pleaded conclusions or were evidentiary.

Bearing in mind the admonition in Rule 45, Texas Rules of Civil Procedure, that "All pleadings shall be so construed as to do substantial justice", as well as the requirement of Rule 91, T.R.C.P., that special exceptions shall "point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to" and applying the well-known rule that in passing upon exceptions we must accept as true all facts which are well pleaded, we will dispose of the questions before us.

As we view the written contract and the practical construction given it by the parties, as alleged, there was no necessity for appellant to plead that he had a real estate dealer's license, required by Article 6573a, Vernon's Ann.Civ.St. or that he was the procuring cause of any sale alleged to have been made by appellee.

The contract did not require appellant to sell real estate. In fact, it did not require him to do anything. It was a contract of general employment in which no duties for appellant were specified.

Appellant's petition shows that the parties construed the contract by their conduct

so as to make appellant a general utility employee doing everything he was directed to do by appellee including furtherance of the sale of appellee's properties.

Appellant did not plead that he was employed to sell real estate or that he made any sales of real estate—only that he assisted appellee in making sales of his own property and that he performed other services for appellee.

■■ Even if the contract, as written, is ambiguous concerning appellant's duties thereunder, it is, nevertheless, well settled that:

"Indefiniteness or uncertainty in a contract may be obviated or removed by * * * the acts of the parties under the contract,—as where they have acted upon and executed it according to their understanding and intentions. A contract which is so uncertain that it cannot be specifically enforced in equity may nevertheless be the basis for a remedy at law in favor of a party who has wholly or partially performed it." 10 Tex.Jur. p. 181.

■ It was not alleged that appellant or appellee was engaged in the real estate business nor that either of them held themselves out as a full or part-time dealer in real estate. It therefore appears to us that appellant was not required to procure a real estate dealer's license because of the exemptions provided in Section 3, Article 6573a, supra, which, in part, reads:

"Sec. 3. The provisions of this Act shall not apply to, and the terms 'Real Estate Dealer' and 'Real Estate Salesmen,' as above defined, shall not include:

"(a). Any person or company who, as owner or lessor, shall perform any of the acts set out in Section 2, Subdivision (a) with reference to property owned or leased by them, or to the regular employees thereof with reference to the property owned or leased by such person or company where such acts are performed in the regular course of, or as incident to, the management of such property and the investment therein, unless such person or company is engaged in the business of buying, selling, exchanging, leasing, or renting of property and holding himself or itself out as a full or part-time dealer in real estate."

That many exceptions were sustained on the ground that certain allegations were immaterial was no doubt due to the trial court's ruling that appellant was required to plead possession of a Real Estate Dealer's license or to plead that he was the procuring cause of sales. These exceptions, so identified, should be overruled.

■ Exception No. 18 directed to the allegations that "In each of said cities Defendant maintained an expensive suite of hotel rooms during his stay, with a plentiful supply of liquors" was properly sustained.

■ We cannot say, however, as a matter of law that "drinks", "entertainment," "tips," "liquor," and "night club" charges are not properly classified as expenses under the pleading in this case.

Rule 45, T.R.P.C., expressly provides: "That an allegation be evidentiary or be of legal conclusion shall not be ground for objection when fair notice to the opponent is given by the allegations as a whole."

■ We consider the pleading adequate to give fair notice to appellee of the material grounds for the suit and all exceptions within Rule 45, supra, should be overruled.

The court sustained an exception to the following allegation:

"During such period of employment under such agreement at the instance of Defendant, Plaintiff expended out of his own funds in behalf of Defendant, with the understanding that same would be repaid to him on demand, the following sums".

In addition to general objections made it was objected that the word "understanding" as used was indefinite and vague in that it did not appear whether the understanding was oral, written or when or how reached.

■ We think the allegations as to an "understanding" immaterial because under

the circumstances alleged the law would imply an obligation to pay for the funds so expended. This exception (24a) should have been overruled.

A special exception was sustained to an itemized statement of expenses alleged to have been paid by appellant on the ground that the expenditures were listed by the month and the exact date of each payment was not given. This exception should be overruled. Such preciseness in pleadings is not required. "On or about" allegations concerning dates are usually sufficient in cases of this character where the exact dates are of little importance.

We have not discussed each exception in detail but we believe that from what we have said the court below is furnished an adequate guide for conducting a new trial.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.